1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

3

MARITZA ORTIZ, ET AL.,

4

Plaintiffs,

5

v.

**Civil No. 13-1475 (SEC)**

6

NYDIA Z. JIMENEZ-SANCHEZ, ET AL.,

7

Defendants.

8

9

**OPINION AND ORDER**

10

Before the Court are the defendants' motions for summary judgment, Dockets ## 64 &

11

74, the plaintiffs' oppositions thereto, Dockets ## 75, 78, and the defendants' replies. Dockets

12

## 86 & 89. For the reasons laid out below, the defendants' motions are **GRANTED**.

**Factual and Procedural Background**

13

"Family issues, including abuse and custody," Judge Boudin has sagaciously remarked,

14

"are among the most difficult for the law to resolve." Brown v. Ives, 129 F.3d 209, 213 (1st Cir.

15

1997). This is because "[s]tandards tend to be vague, situations may be wrenching, and the legal

16

tools at hand are often clumsy." Id. In the "family-law realm," however, "federal damage

17

actions under section 1983 have usually proved to be an ineffective means of adjusting disputes

18

with the authorities." Id.  Of course there might be exceptions; but this pro se civil rights

19

damages suit brought by Maritza Ortiz, individually and on behalf of her daughters A.B.O. and

20

P.H.O, is plainly not among them.

21

This sad tale began when Ortiz lost custody of A.B.O. after several local courts

22

determined  that she had a "mixed personality anxiety disorder," a histrionic disorder, which is

23

"characterized by overreacting in a somewhat dramatic way to minor events," Dragon v. Sec'y

24

of Health & Human Servs., 878 F.2d 1436 (6th Cir. 1989), and that she fabricated sexual abuse

25

allegations against Arnaldo Bello, A.B.O.'s father. Department of Family Services v. Ortiz

26

Sánchez, KLAN201300209, 2013 WL 6211438 (P.R. Cir. Oct. 2, 2013) (certified translation

at Docket # 147-1, pp. 5, 10). Ortiz now challenges these adverse custody decrees in federal

**Civil No. 13-1475 (SEC)**                                                                Page 2

court, complaining about A.B.O.'s alleged "kidnapping" and "incarceration" in connection with

a custody litigation, which resulted in A.B.O.'s release into foster care outside Ortiz's custody.

The remaining defendants—the claims against the others (who never appeared) were dismissed

without prejudice, Docket # 180—are Nydia Z. Jiménez Sánchez (Judge Jiménez), the retired

municipal judge who granted A.B.O.'s emergency custody to the Puerto Rico Family

Department; Haydee Rivera Bermúdez (Rivera), one of the caseworkers assigned to the case;

and Susanne Lugo Hernández (Lugo), the guardian or child representative assigned to protect

A.B.O.'s interests.

The Court recounts below the background leading up to the alleged civil rights

violations, reserving for later discussion a more detailed dissertation of the facts pertinent to the

analysis. In doing so, and whenever the parties quarrel over what occurred, the Court "adhere[s]

to the plaintiff's version in keeping with . . . [its] role in reviewing" summary-judgment

motions, Ahmed v. Johnson, 752 F.3d 490, 492 (1st Cir. 2014), assuming, of course, that those

facts are neither inadmissible nor unsupported by the record.

Ortiz, who happens to be an officer of this court, has two daughters: P.H.O and the

younger A.B.O., born in 2007. A.B.O.'s parents, Ortiz and Bello, have been pinned against each

other in several bitter disputes "arising from differences regarding maintenance, parent-child

contact, education and care of the minor." 2013 WL 6211438, Docket # 147-1 at 1.[1] Things

escalated in 2012, when Bello requested A.B.O.'s custody, to which Ortiz responded with a

petition for a protective order, alleging that Bello had "sexual[ly] abuse[d]" A.B.O. Id. at 4.

---

[1] See Ortiz Sánchez v. Bello Acevedo, No. FAL2007-0690 405, 2013 WL 2298829 (P.R. Cir. Apr. 11, 2013); Ortiz Sánchez v. Bello Acevedo, No. FAL2007-0690, 2012 WL 7071565 (P.R. Cir. Dec. 19, 2012); Ortiz Sánchez v. Bello, No. FAL2007-0690, 2011 WL 2183640 (P.R. Cir. Mar. 21, 2011); Ortiz Sánchez v. Bello Acevedo, No. FAL 2007-0690, 2010 WL 4792629 (P.R. Cir. July 8, 2010); Ortiz Sánchez v. Bello Acevedo, No. FAL2007 0690, 2010 WL 2798798, at *1 (P.R. Cir. May 20, 2010). It appears, furthermore, that in 2005 Ortiz also lost custody of her elder daughter, P.H.O., Díaz Rosario v. Ortiz, No. KLCE0500461, 2005 WL 1703911, at *1 (P.R. Cir. June 28, 2005), though it appears that she has since regained it. See 2013 WL 6211438, Docket # 147-1 at 6.

**Civil No. 13-1475 (SEC)**                                              Page 3

An emergency custody hearing was held on August 7, 2012, and Judge Jiménez was the judicial officer assigned to preside over it. Id. at 5. Ortiz testified at the hearing, and so did a clinical psychologist, who made clear that Ortiz had "a certain psycho-emotional ailment that would have a bearing on her capacity to correctly handle the incidents in which [A.B.O.] has been involved." Ortiz Sánchez v. Bello-Acevedo, No. KLAN201201389, 2012 WL 4761853 (P.R. Cir. Aug. 31, 2012) (certified translation at Docket # 101-1, p. 16). The judge also heard testimony from Rivera, who had interviewed both A.B.O. and Ortiz, and Lugo, who testified that "as part of the protocol no paternal or maternal relations should be allowed until a professional would assess the minor." Id. at 5

Judge Jiménez issued three orders. First, she authorized A.B.O.'s emergency removal under Puerto Rico Law 246 of 2012, P.R. Laws Ann. tit. 8, §§ 1101-1206, known as the "Child Security, Welfare and Protection Act." This resulted in A.B.O.'s removal from Ortiz and her being placed under the custody of the Puerto Rico Family Department "while the possible sexual abuse allegations were investigated." 2012 WL 4761853, Docket # 101-1 at 5. Second, the judge forbade "the paternal and maternal relations, as well as any type of communication with the paternal and maternal family." Id. at 5-6. And finally, she ordered "the Social Worker to perform an immediate assessment on the minor." Id. at 6.

The next day Ortiz repaired to the Puerto Rico Court of Appeals, maintaining in pertinent part that Judge Jiménez had showed a "marked bias against her." Id. at 16. But the appellate court jettisoned that imputation, holding that the judge had not been "biased . . . at all." Id. Judge Jiménez, the court explained, "based [her] determination on the evidence shown before [her] and on specific recommendations of the officers of the State who had intervened in the case, called to protect the particular interest of [A.B.O.] before the serious allegations that were formulated . . . ." Id. Ortiz then filed a certiorari in the Puerto Rico Supreme Court, but it was denied, Docket # 101-2 (Oct. 19, 2012); and so was her reconsideration therefrom. Docket # 101-3 (Nov. 30, 2012).

In the interim, the case was referred to another judge for a so-called "custody ratification hearing," as required by Law 246, P.R. Laws Ann. tit. 8, § 1149. And several hearings were held

**Civil No. 13-1475 (SEC)** Page 4

in late 2012. The court ultimately ratified Judge Jiménez's emergency removal decision. It is

worth reproducing below that court's eyebrow-raising conclusions:

> The evidence . . . clearly and unequivocally shows that [Ortiz] has a personality disorder that limits her in the appropriate protective role that she should have as a mother and that she urgently needs clinical therapy for her emotional health. Said behavior has negatively affected the emotional health of the minor. In fact, the baseless allegation as to sexual abuse made by [Ortiz] against the intervening father and other relatives of his . . . deprived [him] of his paternal right to initiate an investigation before the District Attorney's office.
>
> Additionally, [Ortiz] unnecessarily exposed her daughter to the severity of an evaluation protocol to validate the testimony as an alleged victim of sexual abuse and sought, falsely, that her daughter indicate that she has been abused by the father or relatives. This, in and of itself, is another abusive act by the mother against the minor. Furthermore, she damaged the parent-child relationship with a baseless accusation which not only deprived him of his right to be with his daughter, but also the stigma that said accusation implies and which remains even after this fact has been clarified. To attempt to win a custody litigation in this way is to try to exercise control over her daughter in an appropriate manner and in detriment to her wellbeing, damaging the personal integrity and liberty of others. It is unacceptable that said false allegations were made during judicial proceedings.
>
> But said behavior of [Ortiz] is consistent with diagnoses and findings of experts that were submitted, and which require, as they recommended, that [Ortiz] receive clinical therapy to improve her emotional health which is indispensable for her to aspire to exercise the appropriate motherly role without any more damage to [A.B.O.] and maintaining an optimal relationship with her father and other relatives. After all, the familial environment should be healthy and harmonious for the wellbeing of the minor.

2013 WL 6211438, Docket # 147-1 at 2. The court then referred Ortiz to the Family Department

"to receive services and to design the corresponding parent-child relations plan." Id. at 10. Ortiz

also appealed that decision. But the local appellate court again affirmed, holding that "the

evidence presented" supported the above determinations. Id.[2]

---

[2] As of January 2015, the proceedings concerning the child abuse imputations against Ortiz are ongoing. See Departamento de la Familia v. Ortiz Sánchez, No. FMM2012-0061, 2015 WL 993329, at *15 (P.R. Cir. Jan. 29, 2015). And it appears that A.B.O. is no longer in foster care, and is now under her father's temporary custody. See id. at **4-8, 14.

**Civil No. 13-1475 (SEC)**                                                                Page 5

Undeterred, in June 2013 Ortiz filed this 42 U.S.C. § 1983 action, alleging—in a rambling, unintelligible, and scumbled fashion—that the defendants violated the plaintiffs' constitutional rights, essentially by removing A.B.O. from her custody and placing her in a foster care. Docket # 2.[3] The amended complaint, which is the operative pleading, asserts a compendium of constitutional violations (invoking the Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution, Docket # 6, p. 26), pendent local-law claims for damages, id. at 27, and even claims under the Federal Torts Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, although there are obviously no federal actors involved. The nub of the amended complaint is that Rivera, with Lugo's assistance, "abduct[ed] and incarcerat[ed]" A.B.O. following Judge Jiménez's "instructions." Docket # 6, p. 2. The plaintiffs sue the defendants only in their personal capacities, id. at ¶ 11, seeking over $100 million in damages. Id. at 31.

The defendants moved to dismiss, see Fed. R. Civ. P. 12(b)(6), maintaining that the amended complaint falls short of plausibly stating any constitutional violations, and that in any event they are entitled to immunity for their actions. See Dockets ## 64 & 74. The plaintiffs' oppositions to those motions, Dockets ## 75 & 78, though full of sound and fury, are wholly lacking in substance. Pertinently, however, the plaintiffs furnished several documents and matters outside the pleadings. See Docket # 75-1, pp. 34-36; Docket # 129-1; Docket # 132.

---

[3]The Court assumes, without deciding, that Ortiz can sue on A.B.O.'s behalf. Although Ortiz lost the physical custody of A.B.O., it appears that she retained legal custody ("patria postestad") over her. And under Puerto Rico law, that suffices to bring suit on a minor's behalf. Fernández-Vargas v. Pfizer, 522 F.3d 55, 68 (1st Cir. 2008); Pérez v. Clínica Dr. Perea, 915 F.2d 1556 (1st Cir. 1990). The problem is that it is unclear whether a "conflict exists here between the interests of parent and child." Payne-Barahona v. Gonzales, 474 F.3d 1, 2 (1st Cir. 2007) (citing Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 15-16 (2004)). But given the defendants' failure to address those issues, the Court bypasses this difficult question, addressing instead the case on the merits, which, given their frivolous nature, are easily resolvable against the plaintiffs. Cf. Payne-Barahona, 474 F.3d at 2 (citations omitted); In re Yacovi, 411 F. App'x 342, 346 n. 4 (1st Cir. 2011). And true enough, this circuit "do[es] not allow non-lawyers to represent litigants other than themselves," Amman v. Stow School System, 982 F.2d 644, 648 n. 2 (1st Cir. 1992) (per curiam) (ignoring the problem and affirming on the merits), but Ortiz is an attorney admitted to practice before this court. See D.P.R. Civ. R. 83A(h) ("A non-attorney guardian for a minor or an incompetent person who is not an attorney must be represented by counsel.").

**Civil No. 13-1475 (SEC)** Page 6

Then, in July 2014, the Court converted the motions to dismiss into summary-judgment motions, see Fed. R. Civ. P. 12(d)), and gave the parties additional time to submit "additional exhibits or affidavits . . . ." Docket # 138, p. 2.[4] (Neither party requested to conduct discovery after this conversion.) And because the defendants had ignored "an important decision from the Puerto Rico Court of Appeals," id., they were ordered to produce and translate it. The Court then faulted the defendants for ignoring "complex jurisdictional questions," like the applicability vel non of the Rooker-Feldman doctrine, and ordered the plaintiffs to show cause why, given that doctrine, this case should not be dismissed for want of subject-matter jurisdiction. Id. at 1. And noting that the emergency removal decreed by Judge Jiménez had been "affirmed by the Puerto Rico Court of Appeals, and the Puerto Rico Supreme Court denied certiorari," id. at 2, the Court ordered the parties to brief "the matter of issue preclusion under Puerto Rico law . . . ." Id. Further briefing thus ensued.

Finally, the plaintiffs moved to dismiss the action without prejudice, arguing, without much in the way of an argument, that "new injuries forces [them] to add indispensable parties and amend [their] complaint even further." Docket # 169.[5] The defendants timely opposed. They maintain that Ortiz's latest jeremiad amounts to a desperate attempt to avoid an imminent adverse ruling, and that dismissing the action against them without prejudice would cause them legal prejudice. Docket # 171.

---

[4]The Court will be candid to say that the result would be the same under either the motion to dismiss or a summary judgment standard.

[5]As the defendants correctly point out, the plaintiffs' oppositions introduce a plethora of new factual allegations and legal theories. But the plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss. See, e.g., Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (collecting cases).This gamesmanship is in line with the plaintiffs' "repeated disregard of the applicable rules of procedure." Docket # 164; see also Dockets ## 32, 35, 39, 165

**Civil No. 13-1475 (SEC)**                                                    Page 7

### Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and yet must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Once the moving-party properly constitutes a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). So the nonmovant cannot rest on conclusory allegations and improbable inferences. Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013); neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

### Applicable Law and Analysis

A procedural matter warrants discussion at the outset. The plaintiffs are not, barring court authorization, entitled to dismiss this action without prejudice against the remaining defendants. As correctly argued by the defendants, the Court converted the defendants' motions to dismiss into summary-judgment motions, so the "window for dismissal under Rule 41(a)(1)[(A)(i)]" had closed, e.g., Berthold Types Ltd. v. Adobe Sys. Inc., 242 F.3d 772, 775 (7th Cir. 2001) (Easterbrook, J.); 9 Fed. Prac. & Proc. Civ. § 2363 & n. 21 (3d ed. Updated September 2014), when the plaintiffs moved for voluntary dismissal without prejudice. So Federal Rule of Civil

1

**Civil No. 13-1475 (SEC)**                                                                                          Page 8

2    Procedure 41(a)(2) controls. This rule commands that "an action may be dismissed at the

3    plaintiff's request only by court order, on terms that the court considers proper." And a district

     court abuses its discretion in countenancing a dismissal without prejudice where "the defendant
4
     will suffer legal prejudice." Colón-Cabrera v. Esso Standard Oil Co., 723 F.3d 82, 87 (1st Cir.
5
     2013). In reaching that determination, the First Circuit has instructed district courts to consider,
6
     among other considerations, the so-called Pace factors: (1) the effort and costs incurred by the
7
     defendants in preparation for trial; (2) excessive delay and want of diligence in prosecuting the
8
     action; (3) the legitimacy (or lack thereof) of the explanation for the need to take a dismissal;
9
     and (4) whether a summary-judgment motion has been filed by the defendants. Doe v. Urohealth
10   Sys., Inc., 216 F.3d 157, 160 (1st Cir.2000) (quoting Pace v. S. Express Co., 409 F.2d 331, 334

11   (7th Cir.1969)).

12          The plaintiffs' request to dismiss their claims without prejudice against the remaining

13   defendants lacks force. To begin with, the plaintiffs' motion, which consists of two meager

     sentences and cites no authorities, neglects to even mention the Pace factors. At any rate, three
14
     of the four factors cut against their request for dismissal without prejudice. Summary-judgment
15
     motions are pending. The plaintiffs' explanation to take a dismissal without prejudice is
16
     unconvincing; nothing precluded them from moving, in good faith, to amend their amended
17
     complaint to add "indispensable parties." More importantly, common sense suggests that the
18
     plaintiff moved for voluntary dismissal to "'avoid an imminent adverse ruling.'" Colón-Cabrera,
19
     723 F.3d at 88 (quoting In re FEMA Trailer Formaldahyde Prods. Liab. Litig., 628 F.3d 157,
20   162 (5th Cir.2010)). As matters now stand, with a docket of over 150 entries, the remaining

21   defendants have spent considerable amounts of time and resources (e.g., translating many

22   documents) in defending from Ortiz's overly aggressive and vexatious litigation conduct. (The

23   only factor that appears to favor the plaintiffs is their diligence in prosecuting this action.) In

24   short, countenancing a dismissal without prejudice would inflict legal prejudice on the

25   remaining defendants, whose defenses are formidable, not least because the claims against them

26   are frivolous. Having thus considered the legitimate interests of both the plaintiffs and the

**Civil No. 13-1475 (SEC)**                                                                   Page 9

defendants, together with the foregoing Pace factors, the Court denies the plaintiffs' Rule 41(a)(2) motion.

Turning to the merits, the Court swiftly dispatches some of the plaintiffs' patently frivolous claims. Because the amended complaint contains no allegations that any of the defendants are federal actors, the Fifth Amendment claims fail at the starting gate. E.g., Martínez-Rivera v. Sánchez-Ramos, 498 F.3d 3, 8 (1st Cir. 2007) (affirming dismissal of Fifth Amendment claims because police officers are state actors and not federal actors). The same holds true for the FTCA claims, for it is settled beyond hope of contradiction that the only proper defendant in an FTCA action is the United States; no individual liability thus attaches. E.g., Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000). And the claims under the Ninth Amendment suffer from the same infirmity. "The Ninth Amendment—which stipulates that 'the enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people'—does not create substantive rights beyond those conferred by governing law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 182 (1st Cir.1997); accord Froehlich v. State, Dep't of Corr., 196 F.3d 800, 801 (7th Cir. 1999) (Posner, J.). These hopeless claims are therefore dismissed.

Nor do the Fourth Amendment claims withstand scrutiny. "In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers 'have reason to believe that life or limb is in immediate jeopardy.'" Brokaw v. Mercer County, 235 F.3d 1000, 1010 (7th Cir. 2000) (quoting Tenenbaum v. Williams, 193 F.3d 581, 605 (2d Cir.1999)). Assuming, without deciding, that removing A.B.O. from Ortiz's care and taking her into protective custody qualifies as a seizure, see Brokaw, 235 F.3d at 1010, but see Doe v. Kearney, 329 F.3d 1286, 1298 (11th Cir. 2003), this claim does not hold water. This is because A.B.O.'s seizure was pursuant to a valid court order. So any such seizure was constitutionally reasonable. See Xiong v. Wagner, 700 F.3d 282, 290 (7th Cir. 2012); Krantz v. City of Toledo Police Dep't, 197 F. App'x 446, 453 n. 5 (6th Cir. 2006). And that suffices to sound the death knell on the Fourth Amendment claims.

**Civil No. 13-1475 (SEC)** Page 10

That leaves the claims under the Fourteenth Amendment—the heart of this action. As said, the plaintiffs claim the denial of several substantive due process rights in connection with A.B.O.'s removal from Ortiz's custody. See Docket # 6 at 26.[6]

The liberties safeguarded by the Due Process Clause include "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 65-66 (2000); Suboh v. Dist. Attorney's Office of Suffolk Dist., 298 F.3d 81, 91 (1st Cir. 2002). By like token, "[t]he integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment," Stanley v. Illinois, 405 U.S. 645, 651 (1972) (citations omitted), and "[t]he due process right of parental autonomy might be considered a subset of a broader substantive due process right of familial privacy." Parker v. Hurley, 514 F.3d 87, 102 (1st Cir. 2008) (citing M.L.B. v. S.L.J., 519 U.S. 102, 116 (1996)). Generally speaking, the deprivation of such rights would violate substantive due process. See, e.g., Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 20-22 (1st Cir. 2001).

But such rights, especially "the scope of this interest in familial integrity," Connor B. ex rel. Vigurs v. Patrick, 774 F.3d 45, 58 (1st Cir. 2014), are murky. Id. To be sure, however, there is no dispute that such interests are limited. Id. This is so, of course, because such interests are "balanced against the state's right to investigate allegations of abuse or neglect and take appropriate remedial action." Id. (citing Carter v. Lindgren, 502 F.3d 26, 30 (1st Cir. 2007); Hatch, 274 F.3d at 20-22). "Because the welfare of the child is paramount, an objectively reasonable suspicion of abuse justifies protective measures." Id. at 21. "[I]mminent serious risk of neglect," furthermore, can override family integrity rights. Carter, 502 F.3d at 32. In the Commonwealth of Puerto Rico, Law 246's Article 37 supplies the framework that authorizes

---

[6]The amended complaint asserts no procedural due process violations. But such claims would fail in any event, because the amended complaint does not allege a lack of notice and hearing before such removal. Nor could it, for the record makes manifest that the plaintiffs were provided with both pre-removal and post-removal hearings, which, as the Puerto Rico Court of Appeals held, were more than adequate and fair. See Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003); see also San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 478-81 (1st Cir. 2012) (en banc).

**Civil No. 13-1475 (SEC)**                                                                                        Page 11

its courts, "in protecting the best interest of a minor, [to] issue an order in which the custody [is] immediately granted to the Family Department . . . ." 2012 WL 4761853, Docket # 101-1 at 13 (citing P.R. Laws Ann. tit. 8, § 1147).

Here, as said, both Rivera (the caseworker assigned to the case) and Lugo (A.B.O.'s guardian) recommended that A.B.O. be temporarily removed from Ortiz's care and custody. They made that recommendation given Ortiz's serious sexual harassment imputations against A.B.O.'s father (which of course turned out to be false), and Ortiz's obvious mental impairments, which precluded her from "protec[ting]" A.B.O.'s interests. Id. at 16; 2013 WL 6211438, Docket # 147-1 at 5-6; see also id. at 6 (recounting Ortiz's previous incidents of alleged neglect and abuse against A.B.O.); id. at 7 (discussing Ortiz's extensive psychiatric history). Accordingly, at the emergency custody hearing, the one Judge Jiménez presided over, there existed a reasonable suspicion that abuse had occurred, and, most relevant here, that Ortiz's psychiatric ailments, 2013 WL 6211438, Docket # 147-1 at 5-6, could lead to "neglect or an imminent serious risk of neglect of the child arising from any act or omission of the parent." Carter, 502 F.3d 26 at 31-32; Tower v. Leslie-Brown, 326 F.3d 290, 298 (1st Cir. 2003).  It is therefore entirely reasonable to conclude, as Judge Jiménez did, that the local authorities "needed time to sort everything out, but they could not leave the child in the home where [s]he could possibly be in danger." Piccone v. McClain, 586 F. App'x 709, 711 (1st Cir. 2014) (per curiam) (unpublished). The upshot is that, "[u]nder these circumstances, one may reasonably conclude that the child's interest in being in a safe and neutral environment outweighed [Ortiz's] private interest in the care, custody, and control of h[er] children." Id. That Judge Jiménez's decision was fully ratified by another judge (whose decision was in turn affirmed by the appellate court), who  determined that Ortiz had fabricated the sexual harassment allegations against Bello, buttresses this conclusion. The defendants' actions, then, did not rise to the level of a constitutional violation. See Kauch v. Dep't for Children, Youth & their Families, 321 F.3d 1, 5 (1st Cir. 2003).

**Civil No. 13-1475 (SEC)** Page 12

For these reasons, neither the amended complaint nor any of the exhibits furnished by the plaintiffs suffice to make out any constitutional violations. But even if they did, the defendants would nevertheless be immune from suit. The Court considers each defendant in turn.

Judge Jiménez is, without serious question, entitled to judicial immunity. See Mireles v. Waco, 502 U.S. 9 (1991) (per curiam); Stump v. Sparkman, 435 U.S. 349, 362 (1978). This is because the judge was acting within the scope of her judicial function in granting emergency custody of A.B.O. to the Family Department. And the cases are legion holding that a judge acting in similar circumstances is absolutely immune from suit. See, e.g., Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam); King v. McCree, 573 F. App'x 430, 440 (6th Cir. 2014), cert. denied, 135 S. Ct. 1175 (2015); Addlespurger v. Corbett, 461 F. App'x 82, 85 (3d Cir. 2012); Smith v. City of Hammond, Indiana, 388 F.3d 304, 308 (7th Cir. 2004); Bolin v. Chavez, 24 F. App'x 936, 939-940 (10th Cir. 2001). Although the amended complaint purportedly alleges that Judge Jiménez acted maliciously and corruptly, see Docket # 6, ¶ 46 (alleging that she called Ortiz "vulgar and "kicked" her out of the courtroom); id. ¶ 50 (accusing the judge of having ex parte communications); id. ¶¶ 65, 74 (implausibly accusing Jiménez of altering and "editing" court documents), she would still be entitled to judicial immunity. See Pierson v. Ray, 386 U.S. 547, 553 (1967); Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir. 2013); see also, e.g., Hyland v. Kolhage, 267 F. App'x 836, 840 (11th Cir. 2008) (affording absolute judicial immunity to judge who allegedly instructed clerk to falsify record to reflect requirement that defendant, sentenced to probation for petit theft, also undergo recovery program, when recovery program was not part of original sentence communicated orally). "This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." Cok, 876 F.2d at 2. Only judicial actions taken in the clear absence of all jurisdiction will deprive a judge of absolute immunity, e.g., Sullivan v. Kelleher, 405 F.2d 486, 487 (1st Cir.1968) (per curiam), but neither the amended complaint nor the plaintiffs' fantastical opposition, Docket # 75, alleges either absence of jurisdiction or that

**Civil No. 13-1475 (SEC)** <span style="float:right">Page 13</span>

any of Judge Jiménez's acts were not judicial in nature. To say more on this matter would be pointless.

Lugo is similarly entitled to "absolute quasi-judicial immunity." <u>Brown v. Newberger</u>, 291 F.3d 89, 94 (1st Cir. 2002). Puerto Rico law provides that, in child abuse cases like this one, a minor's interests must be safeguarded and represented by a "Family Relations Solicitor," a type of child representative or guardian ad litem. P.R. Laws Ann. tit. 8, § 1142; <u>see</u> 2012 WL 4761853, Docket # 101-1 at 4 (ruling that the "Family Relations Solicitor," i.e., Lugo, had to "interven[e]" to represent A.B.O.'s "interests"). And guardians are absolutely immune from liability for damages when, as Lugo did here, they "gather[ ] information, prepare[ ] a report and make[ ] a recommendation to the court regarding a custody disposition." <u>Cok</u>, 876 F.2d at 3; <u>accord</u> <u>Gaddis v. United States</u>, 381 F.3d 444, 457 (5th Cir. 2004); <u>Hughes v. Long</u>, 242 F.3d 121, 127-28 (3d Cir. 2001); <u>Kurzawa v. Mueller</u>, 732 F.2d 1456, 1458 (6th Cir.1984). Judge Posner has explained the logic behind this sensible principle: An attorney "asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill her obligations without the worry of intimidation and harassment from dissatisfied parents." <u>Cooney v. Rossiter</u>, 583 F.3d 967, 970 (7th Cir. 2009). The "arguments" contained in the plaintiffs' unintelligible opposition, Docket # 78, are wide of the mark. So Lugo, as A.B.O.'s guardian, deserves protection from harassment by disenchanted litigants like Ortiz—just as judges do.[7]

The same holds true for Rivera, the social worker assigned to the case.[8] Under Puerto Rico law, caseworkers like Rivera must render and file a report, with the family court, on the

---

[7]Even if Lugo were a child representative, <u>see</u> <u>Cooney</u>, 583 F.3d at 970 (discussing differences between guardians and child representatives under Illinois law), the same result would obtain. Child representatives "who although bound to consult the child is not bound by the child's wishes but rather by the child's best interests, and is thus a neutral, much like a court-appointed expert witness." <u>Id.</u>; <u>cf.</u> <u>Malachowski v. City of Keene</u>, 787 F.2d 704, 712-13 (1st Cir.) (juvenile officer is immune from damages when initiating juvenile delinquency proceeding), <u>cert. denied</u>, 479 U.S. 828 (1986).

[8]The Court assumes, without deciding, that Rivera is a state actor. <u>But</u> <u>cf.</u> <u>Brown v. Newberger</u>, 291 F.3d 89, 93 (1st Cir. 2002).

**Civil No. 13-1475 (SEC)**                                                                Page 14

minor and her family; without this report, the judge cannot issue any custody decrees. See P.R.

Laws Ann. tit. 8, § 1147. And Rivera played a crucial role in the Family Department's

investigation of the child abuse allegations and the proceedings that led to the termination of

Ortiz's custody rights. Inasmuch as the claims against Rivera are predicated on her testimony

at the custody hearing, she is entitled to witness immunity. See Briscoe v. LaHue, 460 U.S. 325,

326 (1983); accord Millspaugh v. County Dep't of Public Welfare, 937 F.2d 1172, 1176 (7th

Cir.) cert. denied, 502 U.S. 1004 (1991); Stem v. Ahearn, 908 F.2d 1, 6 (5th Cir. 1990); Meyers

v. Contra Costa County Dep't of Social Serv., 812 F.2d 1154, 1156-57 (9th Cir.), cert. denied,

484 U.S. 829 (1987). In point of fact, Rivera has absolute immunity for her testimony, "even

assuming it was either false or incomplete," Watterson v. Page, 987 F.2d 1, 9 (1st Cir. 1993),

as claimed by Ortiz. Because Rivera was, after all, merely carrying out her work as advisor and

agent of the family court—Judge Jiménez relied on her testimony in court—she is entitled to

absolute immunity. See Mikhail v. Kahn, 572 F. App'x 68, 71 (3d Cir. 2014); Stephens v.

Hayes, 374 F. App'x 620, 623 (6th Cir. 2010).

        And even assuming, dubitante, that the amended complaint contains plausible allegations

against Rivera (and Lugo for that matter) for her non-testimonial role in the proceedings, cf.

Tamas v. Dep't of Soc. & Health Servs., 630 F.3d 833, 842 (9th Cir. 2010), she would

nonetheless be entitled to qualified immunity. See Hatch, 274 F.3d at 25; Watterson, 987 F.2d

at 9; Frazier v. Bailey, 957 F.2d 920, 930 (1st Cir. 1992); Malachowski v. City of Keene, 787

F.2d 704, 712 (1st Cir. 1986) (per curiam). The short of it is that the facts, taken in most

favorably to the plaintiffs (and even assuming them as true), do not make out a constitutional

violation; the Court concluded this much above. And there being no constitutional violations,

the Court need go no further. Kauch v. Dep't for Children, Youth & their Families, 321 F.3d

1, 5 (1st Cir. 2003); see also, e.g., Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014) (discussing

"familiar two-step inquiry [to] determine[ ] whether the defendants are entitled to qualified

immunity"). Rivera and Lugo are thus entitled to qualified immunity on all of the plaintiffs'

claims.

**Civil No. 13-1475 (SEC)**                                                        Page 15

In all events, the Rooker-Feldman doctrine, see Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); District of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 486 (1983), would bar this court from reviewing the question whether, in removing A.B.O.'s custody from Ortiz, the defendants violated the plaintiffs' rights.[9] This doctrine, which if applicable would remove subject-matter jurisdiction over this case, see Silva v. Massachusetts, 351 F. App'x 450, 454 (1st Cir. 2009), prevents a party "complaining of an injury caused by [a] state-court judgment" from seeking redress in a lower federal court. Exxon Mobil Corp. v. Saudi Indus. Corp., 544 U.S. 280, 291-92 (2005).

Ortiz was of course a party to the emergency custody proceedings. Cf. O'Callaghan v. Harvey, 233 F. App'x 181, 183 (3d Cir. 2007) (per curiam). And by the time the plaintiffs lodged this action, Judge Jiménez's custody decree had been affirmed on appeal, and the Puerto Rico Supreme Court had denied certiorari; the emergency custody decree was therefore final. See Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 28 (1st Cir. 2005). Because the plaintiffs' allegations cannot be segregated from the local court's emergency custody decree, Rooker-Feldman bars their claims. See Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) (Boudin, J.); Golden v. Helen Sigman & Associates, Ltd., 611 F.3d 356, 362 (7th Cir. 2010); Atkinson-Bird v. Utah, Div. of Child & Family Servs., 92 F. App'x 645, 647 (10th Cir. 2004). Indeed, the complained-of harms are "inextricably intertwined," Rosenfeld v. Egy, 346 F.3d 11, 19 (1st Cir. 2003), with the local-court custody orders adverse to Ortiz. Put differently, the plaintiffs have not "alleged a harm that is separate and independent from the state court's custody determination." Golden, 611 F.3d at 362; see also Greco v. Fitzpatrick, 59 F.3d 164, 1995 WL 373108, *1 (1st Cir. 1995) (per curiam) (unpublished).

---

[9]The Court intentionally bypassed Rooker-Feldman to reach the merits, which, as should be plain by now, are easily resolvable against the plaintiffs. See Torromeo v. Town Of Fremont, NH, 438 F.3d 113, 115 (1st Cir. 2006) ("Because we agree that Plaintiffs' Fifth Amendment claim is res judicata, we bypass the Rooker-Feldman issue and proceed to the district court's alternative ruling."); see also García-Monagas v. De Arellano, 674 F.3d 45, 50 (1st Cir. 2012).

**Civil No. 13-1475 (SEC)**                                                          Page 16

One last task remains. The amended complaint contains several pendent claims under the Puerto Rico Constitution and the Civil Code's general tort statute. Docket # 6, p. 27. When, as here, "a plaintiff's anchor claim is a federal cause of action and the court unfavorably disposes of the plaintiff's federal claim at the early stages of a suit, well before trial, the court generally dismisses any supplemental state-law claims without prejudice." Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 191 (1st Cir. 2011). But that general principle is not a "mandatory rule to be applied inflexibly in all cases," Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (citation omitted), as "[d]istrict court[s] must exercise 'informed discretion' when deciding whether to exercise supplemental jurisdiction over state law claims." Id. (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)). This determination implicates a weighing of several factors, to wit: comity, judicial economy, convenience, and fairness. Id. (citations omitted).

The Court having evaluated these factors, declines to exercise pendent jurisdiction over the remaining Commonwealth claims. Neither party has briefed those important and complex issues under Puerto Rico law, "exemplif [ying] the difficult cases that District Court judges constantly face. The nature, essence, and value of evidence and the presentation of legal arguments from both parties leave enormous lagoons." Municipio Autónomo de Ponce v. U.S. Office of Mgmt. & Budget, 40 F.Supp.3d 222, 224 (D.P.R. 2014). It is thus neither fair nor convenient for this court to tackle these issues without the benefit of any briefing. And more importantly, comity will be better served by allowing the local courts to resolve such issues of local concern. The pendent claims are therefore dismissed without prejudice.

**Conclusion**

For the reasons stated, all federal-law claims are **DISMISSED with prejudice**. The pendent local-law claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2015.

s/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge